**UNITED STATES of America,**
**Plaintiff–Appellee,**

**v.**

**Robert BRAGGS (92–3804); Avery Clemmons (92–3805); and Norman McCrary (92–3806), Defendants–Appellants.**

Nos. 92–3804 to 92–3806.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 30, 1993.

Decided May 11, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied July 7, 1994 in No. 92–3804.

William E. Hunt, Office of the U.S. Atty., Cincinnati, OH (argued and briefed), for U.S. in No. 92–3804.

Rayl L. Stepter, Reynoldsburg, OH (argued and briefed), for Robert Braggs.

William E. Hunt (argued and briefed), Robert Brichler, Asst. U.S. Atty., Cincinnati, OH, for U.S. in No. 92–3805.

Derek W. Gustafson, Cincinnati, OH (argued and briefed), for Avery Clemmons.

William E. Hunt (argued and briefed), Robert Brichler, Asst. U.S. Atty., Cincinnati, OH, for U.S. in No. 92–3806.

Michael Hohn, Cincinnati, OH (argued and briefed), for Norman McCrary.

Before: BOGGS and SILER, Circuit Judges, and CHURCHILL, Senior District Judge.*

SILER, Circuit Judge.

Defendants Robert Braggs, Avery Clemmons and Norman McCrary appeal their jury convictions for conspiracy to distribute cocaine and cocaine base. Braggs and Clemmons also appeal their convictions for possession with intent to distribute cocaine and cocaine base, while McCrary also appeals his conviction for possession of crack cocaine. The primary issues raised are whether: (1) there were illegal searches of an automobile and an apartment; (2) a new trial should have been granted; (3) the Jencks Act was violated by destruction of notes; and (4) there was sufficient evidence to convict McCrary. For reasons stated herein, we **AFFIRM.**

### I.

On October 15, 1991, Cincinnati Police Officer William Couch received an anonymous phone call at the Street Corner Narcotics unit. The caller stated that two individuals, Avery Clemmons and "R.B.," would be leaving 3881 Reading Road with a quantity of cocaine, and would be entering a white car with temporary tags and traveling to an unknown location on Kellogg Avenue to consummate a drug transaction. No physical description of these individuals was given. As a result of this tip, the police proceeded to the address given and began surveillance. Three men, one of whom was carrying a brown paper bag, were seen leaving the address and then driving off in a white car with temporary tags.

The police called for assistance and followed the car. The car weaved in and out of

---

* The Honorable James P. Churchill, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

traffic and accelerated. When the car made a left turn from the right hand lane, a marked police cruiser pulled the car over. At this point, the car had yet to reach its alleged intended destination on Kellogg Avenue. Braggs was driving the car, and McCrary was in the front passenger seat. One of the officers spotted money and a torn paper bag at the feet of Clemmons who was in the back seat. No one in the car claimed the money, which totaled $3,730.00. A narcotics dog later reacted to the money, indicating cocaine residue. After being escorted from the car and advised of his Miranda rights, Clemmons told officer Couch that he would "show them where the dope was" at the original location, 3881 Reading Road. Based upon this information, and the reaction of the narcotics dog, a search warrant was obtained for 3881 Reading Road. The search of the apartment revealed scales, crack cocaine, and other evidentiary items.[1]

McCrary was arrested under an outstanding warrant at the scene of the traffic stop. One of the officers observed McCrary retrieving a small plastic bag of crack cocaine from his pants and throwing it on the floor of the police van. When McCrary was later taken to use the bathroom, a different officer found an additional quantity of crack cocaine concealed on McCrary's person.

By the time of trial, the police had managed to identify the person who had originally placed the "anonymous" phone call. That person, Michael Starks, testified at trial that he had seen Braggs and Clemmons in possession of cocaine before, that he had driven Braggs to drug deals before, and that he drove Braggs to Clemmons' residence the night before the arrest.

A jury found Braggs and Clemmons guilty on Count 1, conspiracy to distribute crack cocaine; Count 3, possession with intent to distribute more than 50 grams of crack cocaine; and Count 4, possession with intent to distribute cocaine. McCrary was found guilty on Count 1, the conspiracy count, and of a lesser-included offense to Count 2, possession of crack cocaine.

## II.

All three defendants claim a constitutional violation from the traffic stop and subsequent search warrant. They argue that no reasonable suspicion existed when the police stopped the vehicle they were riding in. Therefore, they argue, the evidence seized from the vehicle and apartment was the result of unreasonable searches and seizures.

A district court's factual findings made in consideration of a motion to suppress evidence are to be upheld unless they are clearly erroneous. *See United States v. Coleman*, 628 F.2d 961, 963 (6th Cir.1980). However, the district court's conclusions of law are subject to de novo review on appeal. *See Whitney v. Brown*, 882 F.2d 1068, 1071 (6th Cir.1989). The reviewing court is to review the evidence "in the light most likely to support the district court's decision." *United States v. Gomez*, 846 F.2d 557, 560 (9th Cir.1988).

An investigatory stop of a vehicle can be made upon reasonable suspicion, a standard less than probable cause. *Terry v. Ohio*, 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1879–1881, 20 L.Ed.2d 889 (1968). Reasonable suspicion can be based upon police officers' own observations or upon the collective knowledge of other officers. It can also be based upon an anonymous tip, that is, information from an informant that exhibits sufficient indicia of reliability. *Alabama v. White*, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990).

In *White*, the Supreme Court held that reasonable suspicion existed where a tipster gave information that the defendant would be leaving her apartment at a certain time in a particular model of automobile to deliver cocaine to a specific hotel. *Id.* at 327, 110 S.Ct. at 2414. The Court pointed out that a tip such as this one, standing alone, would not warrant a man of reasonable caution in the belief that a stop was appropriate. *Id.* at 329, 110 S.Ct. at 2415. However, once the anonymous tip is sufficiently corroborated to furnish a reasonable suspicion that the defen-

---

**1.** Although crack was discovered in the apartment, Clemmons did not show the officers the

exact location inside the apartment where it was found.

dant is engaged in criminal activity, an investigative stop does not violate the Fourth Amendment. *Id.* at 331, 110 S.Ct. at 2416. The Court stressed that "[w]hat was important was the caller's ability to predict respondent's future behavior, because it demonstrated inside information—a special familiarity with respondent's affairs." *Id.* at 332, 110 S.Ct. at 2417. Thus, "[w]hen significant aspects of the caller's predictions were verified, there was reason to believe not only that the caller was honest but also that he was well informed, at least well enough to justify the stop." *Id.*

This court has previously held that "[a]n informant's tip is sufficient to establish reasonable suspicion." *United States v. Hardnett,* 804 F.2d 353, 356 (6th Cir.1986), *cert. denied,* 479 U.S. 1097, 107 S.Ct. 1318, 94 L.Ed.2d 171 (1987). Reasonable suspicion need not be based solely on the officer's personal observation. *Adams v. Williams,* 407 U.S. 143, 147, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972). However, "[s]ome tips, completely lacking in indicia of reliability, would either warrant no police response or require further investigation before a forcible stop of a suspect would be authorized." *Id.* Here, the caller gave the specific address from which the individuals were to depart, gave their approximate destination, and stated that they would be traveling in a white car with temporary tags. Further, the caller indicated that the purpose of this trip was to consummate a drug transaction. The information offered by the informant plus the corroboration was sufficient to create a reasonable suspicion by the police that the occupants of the car had drugs in their possession. Therefore, the officers were justified in stopping the car. Moreover, after stopping the vehicle, they could seize the evidence in plain view. *See United States v. Hensley,* 469 U.S. 221, 235, 105 S.Ct. 675, 683, 83 L.Ed.2d 604 (1985). Further, as McCrary was also arrested on an outstanding warrant, the cocaine or crack that was in his possession could be used as evidence without violating the Constitution, assuming the stop of the vehicle was justified. *United States v. Robinson,* 414 U.S. 218, 235, 94 S.Ct. 467, 476, 38 L.Ed.2d 427 (1973). Finally, the apartment search was based upon Clemmons'

admission at his arrest, so if the original arrest was not invalid, the subsequent search of the apartment with a warrant was not unreasonable. *See Wong Sun v. United States,* 371 U.S. 471, 487–89, 83 S.Ct. 407, 417–18, 9 L.Ed.2d 441 (1963).

### III.

■ Next, Braggs argues that the district court erred in denying his motion for a new trial. This motion was based upon evidence of two prior convictions undermining the credibility of Starks, the "anonymous caller." He claims the failure of the prosecution to reveal the convictions at trial violated *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

■ The decision to grant or to deny a motion for a new trial rests within the district court's sound discretion. *United States v. Seago,* 930 F.2d 482, 488 (6th Cir.1991). In *Seago,* this court ruled that it will not reverse a district court's ruling on a motion for a new trial absent a clear abuse of that discretion. *Id.* Further, a new trial will not be granted on the basis of newly discovered evidence unless the following elements are met:

1.  the new evidence was discovered after the trial;
2.  the evidence could not have been discovered earlier with due diligence;
3.  the evidence is material and not merely cumulative or impeaching; and
4.  the evidence would likely produce an acquittal.

*United States v. Barlow,* 693 F.2d 954, 966 (6th Cir.1982), *cert. denied,* 461 U.S. 945, 103 S.Ct. 2124, 77 L.Ed.2d 1304 (1983). Clearly, two of these elements were not met.

First, this evidence was sought merely to impeach the credibility of Starks. The witness had been cross-examined and his testimony concerning the three defendants was corroborated by the seizure of money, drugs and other materials. Second, this evidence would have made no difference in the result of the trial. The two prior convictions were collateral matters not material to the guilt or innocence of the defendants. More impor-

tantly, however, is the fact that defendants knew of one conviction at trial, as Starks admitted on cross-examination that he had a misdemeanor conviction for receiving stolen property for which he had to pay a fine. He gave this response to a question about being convicted of a theft-related offense. He was also asked if he had a felony conviction within the prior ten years, which he truthfully denied, as the felony conviction now raised by the defendant occurred in 1980. Had Starks lied about either conviction, the defendant may have had a proper *Brady* issue, but there was no false testimony. Thus, the refusal of the district court to grant a new trial was not a clear abuse of discretion.

## IV.

■ Braggs also raises the issue of whether the Jencks Act, 18 U.S.C. § 3500, was violated. This argument rests on the proposition that Officer Couch wrote notes during his telephone contact with the "anonymous" informant. However, Couch testified that he didn't recall whether he did, but that if he did, he no longer had the notes, indicating that it would have been on a piece of scrap paper that he would not have kept.

■ The failure of law enforcement officers to preserve evidence potentially useful to a defendant does not violate due process unless it is shown that the officers acted in bad faith. *Arizona v. Youngblood,* 488 U.S. 51, 57, 109 S.Ct. 333, 337, 102 L.Ed.2d 281 (1988). Further, "[w]hatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense." *California v. Trombetta,* 467 U.S. 479, 488, 104 S.Ct. 2528, 2534, 81 L.Ed.2d 413 (1984). There is no indication that there was anything exculpatory about the notes, assuming that at some time they did exist.

Counsel in this case were given a full and fair opportunity to cross-examine Couch concerning the telephone call. Braggs suggests that Couch manufactured the existence of the telephone call, but the testimony of Starks, the person who placed the call, refutes that possibility.

The argument that the Jencks Act, 18 U.S.C. § 3500, has been violated is misplaced. This Act requires the United States to produce any statement made by any witness after that witness has testified. *Id.* § 3500(b). It must be a substantially verbatim recital of an oral statement by the witness that is recorded contemporaneously with the making of the oral statement. *Id.* § 3500(e)(2). Interview notes can be included in the definition of "statement" but such is not the case here. Couch may or may not have taken notes on the name and location of the suspects. This would hardly constitute an interview. The proposed definition of "statement" is much too broad for the purposes of the Jencks Act.

## V.

■ McCrary contends that there was insufficient evidence to convict him of conspiracy to distribute cocaine and cocaine base, or "crack." When arrested, McCrary stated that Braggs was just giving him a ride home. McCrary accepts responsibility for the drugs found on his person, but argues that his mere presence with the other defendants does not make him a conspirator.

Mere presence is not enough to connect a person to a conspiracy. *United States v. Pearce,* 912 F.2d 159, 162 (6th Cir.1990), *cert. denied,* 498 U.S. 1093, 111 S.Ct. 978, 112 L.Ed.2d 1063 (1991). However, once the existence of a conspiracy was established, only slight evidence was needed to connect McCrary to it, if there was sufficient evidence to establish the connection beyond a reasonable doubt. *See United States v. Betancourt,* 838 F.2d 168, 174 (6th Cir.), *cert. denied,* 486 U.S. 1013, 108 S.Ct. 1748, 100 L.Ed.2d 210 (1988); *see also United States v. Barrett,* 933 F.2d 355, 359 (6th Cir.1991); *United States v. Christian,* 786 F.2d 203, 211 (6th Cir.1986). Starks testified that McCrary was present when Braggs and Clemmons cut the crack into smaller pieces earlier that day. Police officers later recovered more than 44 "rocks" of crack from McCrary's person. This certainly constitutes "firm evidence of at least tacit coordination among conspirators." *Pearce,* 912 F.2d at

162. Therefore, McCrary's conspiracy conviction is supported by sufficient evidence.

Defendants have raised several other issues which we have examined and find to be without merit.

AFFIRMED.