*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0008P (6th Cir.)
File Name: 01a0008p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
　　　　*Plaintiff-Appellee,*

　　　*v.*　　　　　　　　　　　　　No. 98-6680

RICHARD PERRY CURTIS,
　　　　*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 95-20020—Jon Phipps McCalla, District Judge.

Argued: March 14, 2000

Decided and Filed: January 10, 2001

Before: JONES, BATCHELDER, and CLAY, Circuit
Judges.

———————————

**COUNSEL**

**ARGUED:** Michael J. Stengel, Memphis, Tennessee, for
Appellant. Jennifer Lawrence Webber, ASSISTANT
UNITED STATES ATTORNEY, Memphis, Tennessee, for
Appellee. **ON BRIEF:** Michael J. Stengel, Memphis,
Tennessee, for Appellant. Jennifer Lawrence Webber,
ASSISTANT UNITED STATES ATTORNEY, Memphis,

Tennessee, for Appellee.  Richard Perry Curtis, Forrest City, Arizona, pro se.

JONES, J., delivered the opinion of the court, in which CLAY, J., joined.  BATCHELDER, J. (pp. 14-17), delivered a separate dissenting opinion.

---

**OPINION**

---

NATHANIEL R. JONES, Circuit Judge.   Defendant-Appellant Richard Perry Curtis ("Curtis") appeals from a district court order revoking his supervised release.  Although we find most of Curtis's arguments meritless, we **REVERSE** and **REMAND** for the district court to use the proper standard in reviewing the magistrate court's probable cause determination and to give Curtis the opportunity to allocute prior to sentencing.

**I.**

**A.**

On January 26, 1995, a federal grand jury sitting in the Western District of Tennessee indicted Curtis for three counts of access device fraud in violation of 18 U.S.C. § 1029.  The indictment stemmed from allegations that on three occasions, Curtis attempted to charge over $1,000 on credit cards owned by others.  Curtis pleaded guilty to the indictment and, on August 28, 1995, the district court sentenced him to thirty months' imprisonment followed by a three-year period of supervised release.  The court also ordered Curtis to pay restitution of no less than fifteen percent of his income to the three credit card companies that he had defrauded. Curtis did not appeal the district court's judgment.

B.

On December 26, 1997, Curtis was released from custody and began serving his supervised release. A number of conditions accompanied Curtis's supervised release, including that he 1) not commit another federal, state, or local crime; 2) pay court-ordered restitution in accordance with the court-ordered payment schedule; and 3) comply with standard supervised release conditions, including not leaving the judicial district without permission of the court or probation office, and answering truthfully all inquiries by the probation officer. J.A. at 28-29.

On May 1, 1998, the Germantown Police Department arrested Curtis and charged him with eighty-three counts of promoting prostitution. On June 23, 1998, a federal grand jury indicted Curtis with fifteen counts of money laundering, racketeering, and the use of facilities in interstate commerce to promote prostitution. The state charges were thereafter dismissed in lieu of the pending federal charges. Following these charges, the district court signed a Probation and Supervised Release petition ordering a hearing to determine whether it should revoke Curtis's supervised release. The petition alleged that Curtis violated all four conditions enumerated above. J.A. at 40-41.

The first alleged violation (alleged violation 1) was based upon three instances when Curtis allegedly violated a federal, state, or local law: (1) Curtis's May 1, 1998 arrest and eighty-three count state indictment for promoting prostitution; (2) the fifteen-count federal indictment filed on June 23, 1998; and (3) false statements provided by Curtis to the probation office on his monthly supervision reports filed from December 1997 through March 1998, in violation of 18 U.S.C. § 1001. Second, the petition alleged that Curtis was untruthful when he responded to the probation office's inquiries regarding his living expenses (alleged violation 2). Third, the petition alleged that Curtis failed to submit restitution payments in the amount of fifteen percent of his gross income, and therefore violated the restitution condition of his supervised release

(alleged violation 3). Finally, the petition alleged that Curtis left the judicial district without obtaining proper permission because on or about April 8, 1998 and April 22, 1998, he traveled to Robinsonville, Mississippi and Nashville, Tennessee, respectively, without the permission of his probation officer (alleged violation 4).

The magistrate court presided over a hearing on these alleged violations and found probable cause that Curtis had violated three of the four conditions enumerated above. Regarding alleged violation 1, the court noted three instances establishing probable cause that Curtis violated federal or state law: the 83-count state indictment for promoting prostitution; the 15-count federal indictment; and Curtis's violation of 18 U.S.C. § 1001 by making false statements as to the nature of his employment. Concerning alleged violation 3, the court found that there was probable cause that Curtis had violated the court-ordered restitution program because Curtis did not make restitution payments of $150 for January and March 1998—when he had represented to the parole office that he had earned $1,000 in each month. Finally, the court found probable cause that Curtis had left the judicial district without the permission of his parole officer. The court thus ordered Curtis to be held for a final revocation hearing before the district court. *See* J.A. at 50-51.

At the same time, the magistrate court found that several of the petition's allegations were not supported by probable cause. Regarding the first alleged violation, the court found that the prosecution did not establish probable cause that Curtis provide false statements regarding his monthly income in violation of 18 U.S.C. § 1001. Moreover, the court found that alleged violation 2—that Curtis failed to answer truthfully all inquiries by the probation officer regarding living expenses—was unsupported by probable cause in its entirety. The United States filed a motion appealing the magistrate court's findings of insufficient evidence on these two issues.

of Civil Procedure, and applies when reviewing questions of fact"). The determination of whether or not an order is contrary to law is necessarily a purely legal inquiry. The appropriate standard for review is de novo.

Lastly, even assuming that § 636(b)(1)(A) provides the correct standard for a district court's review of a magistrate's probable cause determination in a preliminary hearing for revocation of supervised release, and assuming that a defendant can somehow be prejudiced by improper review of such a determination when the district court later determines whether the defendant in fact violated the conditions of his supervised release, it is evident that the district court in this case was "left with the definite and firm conviction that a mistake had been committed." *Heights Community Congress v. Hilltop Realty, Inc.*, 774 F.2d 135, 140 (6th Cir. 1985) (so defining the clearly erroneous standard of review). The district court acknowledged that the magistrate rarely made erroneous probable cause determinations. The district court then went on to suggest that in making her probable cause finding, the magistrate judge had "grabbed" a red herring that had been "lofted out there" by defense counsel. J.A. 109. Although the district court did not invoke the words "clear error," this statement makes it plain that the court had a firm conviction that the magistrate was mistaken.

The fact that the magistrate characterized the probable cause determination as a "decision" rather than a "report or recommendation" is of no moment. It is well established that the judge always retains authority to make the final determination. *See Thomas v. Arn*, 474 U.S. 140, 152 (1985)([The statute] "does not preclude further review [of a magistrate's decision] by a district judge, sua sponte or at the request of a party, under a de novo, or any other standard.").

Moreover, in the context of this case, the district judge's finding of probable cause in contravention of the magistrate's decision was purely a legal determination, and involved no new factual findings. The determination of probable cause is a mixed question of fact and law. *Gardenhire v. Schubert*, 205 F.3d 303, 312 (6th Cir.1999). In the instant case, the judge accepted the facts as the magistrate found them, but reached a different legal conclusion in the application of those facts to the law. This circuit has held en banc that mixed questions of fact and law are treated as questions of law. *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999) (en banc). Mixed questions, like other conclusions of law are reviewed de novo. *Id*. *See United States v. Bennett*, 170 F.3d 632, 635 (6th Cir. 1999)(district court's conclusions of law regarding denial of motion to suppress reviewed de novo); *Automatic Sprinkler Corporation of America v. National Labor Relations Board*, 120 F.3d 612, 616 (6th Cir. 1997)(administrative board's conclusions of law reviewed de novo); *Raczak v. Ameritech Corporation*, 103 F.3d 1257, 1261 (6th Cir. 1997)(district court's grant of summary judgment reviewed de novo).

Even assuming arguendo that a preliminary hearing on a supervised release violation falls into the category of "pretrial matter" under § 636 (b)(1)(A), the statute allows a judge to "reconsider any pretrial matter" where "the magistrate's order is clearly erroneous *or* contrary to law." 28 U.S.C. § 636(b)(1)(A), *emphasis added*. "Clear error" is a term that courts apply to the review of questions of fact. *See Ornelas v. United States*, 517 U.S. 690, 694, n.3 (1996)("'Clear error' is a term of art derived from Rule 52(a) of the Federal Rules

### C.

After a hearing, the district court entered an order reinstating the allegations that the magistrate court had dismissed. The United States then filed an amended petition which alleged that the sole basis of alleged violation 1 was that Curtis provided false statements regarding the nature of his employment and monthly income in violation of 18 U.S.C. § 1001. J.A. at 94-95. The other alleged violations remained unchanged.

The district court then held a final revocation hearing. The United States presented the testimony of parole officer Marnie Klyman and Detective Floyd Covey, Jr., who relayed in detail Curtis's activities while on supervised release as well as their conclusions that he had clearly violated the conditions of his release.[1] After hearing this testimony, the district court found that Curtis violated all four of the conditions of his supervised release alleged by the United States. The court revoked Curtis's supervised release and sentenced him to a term of imprisonment of twenty-four months. J.A. at 23. Curtis timely appealed this judgment.

### D.

Curtis advances six claims of error regarding the district court's finding that he violated the conditions of his supervised release. Three of these arguments are brought by Curtis's counsel and three are raised pro se in a supplemental brief filed by Curtis. First, Curtis disputes the standard of review utilized by the district court in reviewing the

---

[1] The gist of Klyman's and Covey's testimony was that Curtis was operating an illegal escort service business from a property he had leased; that he had misrepresented the nature of his employment; that he had accumulated substantial funds from this illegal business but had provided false statements to the parole officers as to that income; that he had not paid the proper amount in restitution payments; that he had misstated the amount he was paying in rent as well as his level of living expenses; and than on several occasions Curtis had left the judicial district without permission, which was evinced by credit card expenses.

magistrate court's probable cause findings; while the district court should have reviewed those findings under a "clearly erroneous or contrary to the law" standard, Curtis contends that the court applied only de novo review. Second, Curtis argues that the evidence was insufficient to support the district court's revocation of Curtis's supervised release and that the district court exhibited bias toward Curtis. Third, Curtis argues that it was improper for Curtis to be sentenced by the district court without Curtis first being given an opportunity to allocute.

Curtis, pro se, raises three additional issues. First, he argues that he could not have violated 18 U.S.C. § 1001 because his alleged false statements were made to a member of the judicial branch of government. He also argues that the district court's sentencing proceeding violated the rules of criminal procedure because the district court did not specify the statute under which Curtis was being sentenced. Finally, Curtis argues that the district court erred by ruling that Curtis should have reported money received for his work at a half-way house as income to his probation officer.

## II.

We find that a remand is necessary for two reasons articulated by Curtis: the district court used the incorrect standard of review in reviewing the magistrate court's probable cause findings, and failed to provide Curtis with the opportunity to allocute. We find Curtis's other arguments meritless.

## A.

Curtis argues that the district court used the wrong standard of review in reinstating the allegations dismissed by the magistrate court. According to Curtis, the court erred because it did not review the magistrate court's finding that those allegations lacked probable cause under the clearly erroneous standard, the standard which Curtis maintains is required by 28 U.S.C. § 636(b). The court reviews a question of law *de novo*. *See United States v. Braggs*, 23 F.3d 1047, 1049 (6th

purpose to retain "the ultimate adjudicatory power over dispositive motions in the district court." *United States v. Raddatz*, 447 U.S. 667, 675, quoting S. Rep. No. 94-625, at 10, *internal quotation marks omitted*. The House Report also articulates the congressional intent, stating that "[t]he ultimate adjudicatory power over dispositive motions . . . is exercised by a judge of the court after receiving assistance from and the recommendation of the magistrate." *See Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1985), quoting H.R. Rep. No. 94-1609 at 11, reprinted in 1976 U.S. Code Cong. & Ad. News at 6171. Rule 72 of the Federal Rules of Civil Procedure also supports this distinction between dispositive and non-dispositive matters providing that "[a] magistrate assigned . . . to hear a pretrial matter dispositive of a claim or defense of a party . . . shall promptly conduct such proceedings as are required." Upon objection of a party, the proceedings are subject to de novo review by the district court. Fed. R. Civ. P. 72(b); *see Callier v. Gray*, 167 F.3d 977, 980 n.7 (6th Cir. 1999).

In this case, the determination of whether probable cause exists to find a violation of the terms of supervised release is clearly a dispositive question, and should be treated in a manner consistent with the well established policy of de novo review. A finding of no probable cause by a court in regard to a supervised release violation effectively ends the government's prosecution of the claim. In this way, it is closely akin to a motion to dismiss, or motion for summary judgment and the class of motions specifically excepted by § 636(b)(1)(A) for de novo review. The existence of probable cause to support prosecution is fundamental to the case, and has little in common with a pre-trial discovery matter. The law of this circuit is clear that a magistrate's decision that functions as a dispositive ruling is subject to de novo review. *See United States Fidelity and Guaranty Co. v. Thomas Solvent Co.*, 955 F.2d 1085, 1088-89 (6th Cir. 1992)(Magistrate's decision regarding realignment of parties destroyed federal jurisdiction was dispositive and subject to de novo review by district court.).

---

**DISSENT**

---

ALICE M. BATCHELDER, Circuit Judge, dissenting. I respectfully dissent. First, I disagree with the remand of this case to the district court. If the goal of the majority is to articulate the appropriate standard of review of a magistrate judge's action in regard to a probable cause hearing for an alleged violation of supervised release conditions, that can be accomplished without remand for what almost certainly will be redundant proceedings.

Secondly, and more importantly, I think the majority articulates the wrong standard for the district court's review of a magistrate judge's decision. The majority concluded that the district court erred by reviewing the magistrate judge's decision de novo, rather than for clear error. However, the language of the statute, and the policy it articulates, indicate that de novo review of a magistrate's determination of probable cause is appropriate.

The majority characterizes the preliminary hearing as a "pretrial matter" under 28 U.S.C. § 686(b)(1)(A), and reasons accordingly that the district judge should review the magistrate's findings only for clear error. However, the majority reasons from a faulty premise.

A probable cause hearing regarding a violation of conditions of supervised release necessarily occurs post-trial. Although the determination of a supervised release violation in many ways mirrors a criminal trial, the preliminary hearing afforded a defendant has little in common with the pretrial matters anticipated by § 636(b)(1)(A).

The policy of the Federal Magistrate's Act, evinced by the legislative record and subsequent case law, is to permit magistrate judges to hear and determine non-dispositive matters while leaving dispositive decisions to district judges. The Senate Report that accompanied the Act stated its

Cir. 1994). In doing so, we agree with Curtis that the district court was required to use the clearly erroneous standard. Because there is considerable ambiguity in the record as to whether the court did so, a remand is necessary.

1.

Congress promulgated 28 U.S.C. § 636 to relieve some of the burden on the federal courts by permitting the assignment of certain district court duties to magistrates. *See Gomez v. United States*, 490 U.S. 858, 869-70 (1989) (reviewing legislative history of § 636). Section 636(b) lists what powers may be assigned to magistrates from the district courts and outlines the applicable standard of review for objections made to magistrate rulings and findings on such assigned matters.

> Notwithstanding any provision of law to the contrary, a judge may designate a magistrate to hear and determine *any pretrial matter pending before the court*, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action. *A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate's order is clearly erroneous or contrary to law.*

28 U.S.C. § 636(b)(1)(A) (emphasis added). On the other hand, § 636(b) provides that de novo review is appropriate when a district court is reviewing magistrate court findings on matters excepted under subparagraph (A), as well as magistrate findings on applications for posttrial relief made by convicted defendants and of prisoner petitions challenging conditions of confinement. *See* 28 U.S.C. § 636(b)(1)(B).

Thus, § 636(b) creates two different standards of review for district courts when a magistrate court's finding is challenged

in district court. A district court shall apply a "clearly erroneous or contrary to law" standard of review for the "nondispositive" preliminary measures of § 636(b)(1)(A). *United States v. Raddatz*, 447 U.S. 667, 673 (1980). Conversely, "dispositive motions" excepted from § 636(b)(1)(A), such as motions for summary judgment or for the suppression of evidence, are governed by the de novo standard. *See id.* at 674.

2.

Curtis argues that the magistrate court conducted the probable cause hearing pursuant to § 636(b)(1)(A), and that therefore the Government's challenges to such findings should have been governed by the clearly erroneous standard. We agree.

The rule granting authority to the magistrate court to hold a probable cause hearing in the revocation context evinces that the magistrate's determination is a preliminary trial matter for the district court to review under the clearly erroneous standard. In the instant case, the relevant local rule in the Western District of Tennessee assigned the magistrate the duty to conduct "preliminary, detention, and bail hearings for persons charged with violation of probation or supervised release, pursuant to Fed. R. Crim. P. 32.1(a)." W.D.Tenn. L.R. 72.1(a)(6). Rule 32.1 speaks explicitly of a district court or magistrate court's duty to hold a "preliminary hearing" to determine if there is probable cause for a revocation hearing. Fed. R. Crim. P. 32.1(a)(1). *See also United States v. Williams*, 919 F.2d 266, 270 (5th Cir. 1990) ("Rule 32.1(a) contemplates that a magistrate may hold a preliminary hearing on a motion to revoke supervised release or probation, if given authority to do so by a district court by 28 U.S.C. § 636."); *United States v. Young-Bey*, No. 92-3199, 1993 WL 10846, at *1 (D.C. Cir. 1993) (unpublished opinion) (stating that "the purpose of the preliminary hearing is to ensure that there is justification for holding the defendant pending a revocation hearing"). Finally, a probable cause hearing in the revocation context is not one of the proceedings that the

### III.

While most of Curtis's arguments lack merit, we cannot discern from the record whether the district court applied the correct standard of review in reinstating certain charges against Curtis. Curtis also was deprived of the opportunity to allocute prior to sentencing. We therefore **REVERSE** and **REMAND** Curtis's case for proceedings consistent with this opinion.

1997).  Here, the testimony of Covey and Klyman was certainly sufficient to support the court's decision.  We also find meritless Curtis's argument that the district court exhibited bias against him during the hearings.

Curtis's pro se arguments, all raised for the first time on appeal, are equally unavailing.  Curtis's reliance on *Hubbard v. United States*, 514 U.S. 695 (1995), to argue that 18 U.S.C. § 1001 applies only to false statements to members of the federal executive branch overlooks the fact that Congress amended the statute to apply to the judiciary as well.  *See* 18 U.S.C. § 1001(a)(1) (stating that a violation is committed by "whoever, in any matter within the jurisdiction of the executive, legislative, *or judicial branch* of the Government of the United States, knowingly and willfully conceals, or covers up by any trick, scheme, or device a material fact") (emphasis added).  Curtis's false statements to a parole officer clearly fall within the scope of 18 U.S.C. § 1001.

Curtis also is incorrect when he argues that the district court sentenced him in violation of Fed. R. Crim. P. 32(d)(1) because during its oral pronouncement of sentence the district court did not explicitly state the reasons that Curtis was being sentenced.  Rule 32(d)(1) addresses only the necessary components of a "judgment of conviction," which is clearly not the equivalent of the oral pronouncement of sentence.  *See generally Kapral v. United States*, 166 F.3d 565, 569 (3d Cir. 1999) (defining "judgment of conviction" as a "formal document [] signed by the trial judge and entered by the clerk of the district court").

Finally, Curtis argues that the district court erred by considering income Curtis earned at a half-way home as income applicable to the restitution schedule of his supervised release.  We need not address this argument because of the considerable other evidence that Curtis failed to comply with his court-ordered restitution payments from January through May, 1998.

statute excepts from the clearly erroneous standard.  *See* 28 U.S.C. § 636(b)(1)(A)-(B).  In sum, a magistrate court's probable cause determination in the revocation context comprises a preliminary, non-dispositive matter under § 636(b)(1)(A), and a district court must apply a clearly erroneous standard of review.

Rather than disputing whether the magistrate court acted under § 636(b)(1)(A), the United States argues that (1) even if the district court did not explicitly review the magistrate's findings under a clearly erroneous standard, such review was implicitly performed by the district court, and (2) even if the wrong standard was utilized by the district court, that wrong was "cured" by the district court's ultimate finding that Curtis violated his supervised release by a preponderance of the evidence at the final revocation hearing.  We are not persuaded by either argument.

First, we find the transcript of the reinstatement hearing and the order reinstating the allegations to be ambiguous as to what standard of review the district court applied in reviewing the magistrate court's findings.  The district court neither stated nor implied whether it was conducting the hearing under a clearly erroneous standard or a de novo standard.  Nor does the nature of the court's comments during the hearing lead us to any certain conclusion as to which standard it was applying.  On the one hand, the tone of some of the court's comments suggests that the district court used a de novo standard.  For example, the court stated: "I'm not deciding the facts, I'm just saying there's probable cause to support the proposition," J.A. at 106; and "it appears in this case that the government did show that there is probable cause to support the dismissed assertion." J.A. at 106-07. Similarly, the court's order following that hearing stated simply that the Court "concluded probable cause was established" that Curtis had falsely answered inquiries regarding his living expenses and monthly income.  J.A. at 79.  In contrast, the district court hinted at one point in the hearing that it found the magistrate court's decision to be more seriously flawed—perhaps to a degree that would satisfy a clearly erroneous threshold.  J.A.

at 109 ("I really have yet to understand why what happened [below] happened, but there was a red herring lofted out there and it got grabbed, and that sometimes happens to all of us.") Looking at these statements and others, we find the record simply too vague to conclude that the district court was using the clearly erroneous standard.

We also are not moved by the Government's argument that the final revocation hearing "cured" any possible error the court committed when reinstating the three dismissed allegations under de novo review. The United States argues that because the district court found that Curtis had violated the dismissed allegations by a preponderance of the evidence at the final revocation hearing, Curtis was not denied due process even if the court applied the wrong standard in reinstating those allegations. We do not find that § 636 allows for this "curing"; such a loose theory would render hollow the clear statutory mandate that non-dispositive matters decided by a magistrate be reviewed under a "clearly erroneous" standard.

Section 636(b) requires that a district court review for clear error a magistrate's probable cause determination on the alleged violation of conditions of supervised release. From the record, we are unable to conclude that the district court utilized this standard of review when it reinstated the allegations in question. It is also not clear from the record what role these reinstated charges played in the ultimate sentence of twenty four months' imprisonment.[2] Remand is

---

[2] We recognize that the reinstated charges may have played no role whatsoever in Curtis's sentence. The district court was clearly weighing other charges in addition to those it reinstated. Moreover, the statute grants the district court considerable discretion in sentencing a defendant who has violated any *one* condition of his supervised release, allowing a court to

revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on

necessary to allow the court to examine the magistrate court's findings under the proper standard, and to sentence Curtis accordingly.

### B.

Curtis next argues, and the United States agrees, that Curtis is entitled to a remand so that he may allocute. In *United States v. Waters*, decided approximately two months before Curtis's final revocation hearing, the Sixth Circuit established a prospective rule that district courts within the circuit must provide defendants with an opportunity to allocute before imposing a sentence for a violation of a supervised release. 158 F.3d 933, 944-45 (6th Cir. 1998). Because the district court did not allow Curtis to allocute, the case should be remanded to provide that opportunity. *See id.* at 945 (remanding to allow allocution).

### C.

We find for the Government regarding Curtis's four remaining arguments. First, we are unpersuaded by his argument that the court's finding that he violated his supervised release is not supported by sufficient evidence. A district court's finding that a defendant violated the terms of his supervised release is reviewed for abuse of discretion. *See United States v. Lowenstein*, 108 F.3d 80, 85-86 (6th Cir.

---

postrelease supervision, if the court, pursuant to the Federal Rules of Criminal Procedure applicable to revocation of probation or supervised release, finds by a preponderance of the evidence that the defendant violated a condition of supervised release, except that a defendant whose term is revoked under this paragraph may not be required to serve more than 5 years in prison if the offense that resulted in the term of supervised release is a class A felony, more than 3 years in prison if such offense is a class B felony, more than 2 years in prison if such offense is a class C or D felony, or more than one year in any other case.

18 U.S.C. § 3583(e)(3).