File Name: 07a0517n.06
Filed: July 19, 2007

NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

No. 07-3190

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.                                                                                       ON APPEAL FROM THE
                                                                                           UNITED STATES DISTRICT
SHAWN QUINNEY,                                                           COURT FOR THE NORTHERN
                                                                                           DISTRICT OF OHIO

    Defendant-Appellant.

_____/

**OPINION**

Before:       MARTIN and McKEAGUE, Circuit Judges; GREER, District Judge.[*]

       BOYCE F. MARTIN, JR., Circuit Judge. Shawn Quinney appeals the district court's denial

of his motion to suppress, a decision largely adopting the report and recommendation of a magistrate

judge. Because the district court applied the incorrect standard of review in considering the report

_____

      [*]The Honorable J. Ronnie Greer, United States District Judge for the Eastern District of
Tennessee, sitting by designation.

and recommendation, we now **VACATE** the decision of the district court and **REMAND** for further proceedings as articulated below.

I.

In the fall of 2005, the United States Secret Service identified Quinney as potentially involved in the passing and printing of counterfeit United States currency. Pursuant to their investigation, on September 27, 2005, Secret Service agents went to his home in Toledo, Ohio and he consented to talk with them outside.[1] During the interview, Quinney admitted to passing the counterfeit currency, but denied any involvement in printing it. Following this discussion, the agents obtained Quinney's consent to search his upstairs bedroom. The agents also obtained consent to search from Quinney's stepfather, Chris Jacobs, who was the owner of the house. (Quinney was nineteen years old at the time of the suppression hearing. Although it is not entirely clear from the record, one can assume that he was either eighteen or nineteen at the time of his encounters with the agents and their seizure of his printer.) The search of Quinney's bedroom revealed a printer/scanner/copier machine, but the agents did not seize it at this time. No sooner had the agents departed, however, they received a radio communication from another agent who told them he had just interviewed someone who said that Quinney was the "printer" of the currency. Thus the agents returned to Quinney's home approximately two hours later to re-interview him. Upon learning from

---

[1]Perhaps not surprisingly, the parties dispute just how "consensual" this encounter really was. Quinney testified at the suppression hearing that he did not feel free to get out of the agents' car during the interview. In contrast, the agents testified that they had in fact offered to conduct the interview in Quinney's house in the presence of his mother and stepfather, yet Quinney "didn't want his parents to know what was going on" and thus requested that the interview be conducted outside the house in the agents' car.

Jacobs that Quinney had stepped out, the agents told Jacobs they "would have to seize" the printer/scanner/copier from Quinney's bedroom. Jacobs consented to the seizure, although he later testified that he did not feel as if he had much of a choice in the matter because the agents made a command, not a request, for the printer. The agents then looked for Quinney in the neighborhood, found him, and re-interviewed him in their car. During this second interview, when confronted with the agents' newly acquired information, Quinney admitted to having printed counterfeit currency, both orally and in a written statement. Quinney was not Mirandized at either of these first two interviews.

On October 4, 2005, Quinney was interviewed for a third time. The interview took place at the agents' office. According to the government, Quinney was Mirandized despite being told, as he had been during the two prior interviews, that he was not under arrest. Quinney contests this assertion, arguing that at no time during the third interview was he read his *Miranda* rights. During the third interview, Quinney wrote out a one-page supplement to his written statement of September 27, and he also identified the particular counterfeit notes that he had manufactured.

On December 7, 2005, Quinney was charged in a two-count indictment for: (1) manufacturing counterfeit currency in violation of 18 U.S.C. § 471, and (2) uttering counterfeit currency in violation of 18 U.S.C. § 472. The case was referred to a magistrate judge, who held an evidentiary hearing on Quinney's motion to suppress the printer/scanner/copier as well as his oral and written statements. On June 2, 2006, the magistrate judge issued a report recommending denial of the motion to suppress. Quinney objected to the magistrate's ruling, but the district court adopted the magistrate's ultimate conclusions. Quinney then entered conditional pleas of guilty to each count

of the indictment, preserving his right to appeal the denial of his motion to suppress. On February 16, 2007, Quinney was sentenced to a term of five months' imprisonment, to be followed by three years' supervised release. He now appeals.

II.

It is well-settled that upon proper objection by a party, a district court must review de novo a magistrate judge's ruling on a motion to suppress. *See United States v. Curtis*, 237 F.3d 598, 603 (6th Cir. 2001) (holding that a magistrate judge's ruling on "dispositive" motions, such as those for summary judgment or the suppression of evidence, must be reviewed de novo by the district court); 28 U.S.C. § 636(b)(1) (providing that a district judge "shall make a de novo determination of those portions of the [magistrate judge's] report or specified proposed findings or recommendations to which objection is made"). Quinney argues that the district court, rather than conducting <u>de novo</u> review of the magistrate judge's report and recommendation, reviewed it under the <u>clearly erroneous</u> standard. Quinney believes this panel should therefore vacate his sentence and remand to the district court for further consideration under the appropriate standard.

In support of his argument, Quinney points to the opening two paragraphs in the district court's opinion and order, which read in full as follows:

> This action is before the Court on Defendant Shawn Quinney's objections to the June 6, 2006, Report and Recommendation of the United States Magistrate Judge ("R & R") and the Government's response thereto. When a magistrate judge's finding is challenged in district court, the district court shall apply a "clearly erroneous or contrary to law" standard of review for "nondispositive" preliminary matters, while "dispositive motions" are governed by the de novo standard. 28 U.S.C.A. § 636(b)(1)(A, B). *United States v. Curtis*, 237 F.3d 598, 603 (6th Cir. 2001). ***In this instance the Court has conducted a clearly erroneous review.*** For the following

> reasons, the Court finds Plaintiff's objections are not well taken and the same are denied.

> The R & R issued by Magistrate Judge Armstrong concluded that Defendant's motion to suppress evidence (Doc. No. 9) be overruled. ***This Court has reviewed the finding in the R & R and the memoranda filed by the parties both initially and in connection with objections to the R & R under the standard set forth above.*** The Court has also reviewed a transcript of the hearing on the motion to suppress, which evidentiary hearing was held on February 28, 2006. After such review, this Court will adopt in full the Magistrate Judge's R & R and overrule Defendant's motion to suppress.

Joint App'x at 51-52 (emphasis added and internal references to court documents omitted).

The government does not dispute that the district court clearly misstated its standard of review. It suggests, however, that this was a mere slip of the pen, because the district court went on to conduct what was in effect a de novo review of the suppression issue "by re-examining the entire record." Gov't Br. at 9. The government's position appears to be as follows: because the district court stated it had "reviewed" both the memoranda filed by the parties before the magistrate judge and the transcript of the hearing on the motion to suppress, the district court's review was necessarily de novo. We find this argument unconvincing. After all, even when a reviewing court applies the more deferential clearly erroneous standard, it must still "review" the lower court proceedings for it to gauge whether the lower court's conclusions derived from those proceedings were clearly erroneous. Thus while it is *possible* that the district judge in this case actually applied one standard of review but mistakenly told his readers that he was applying a different one, it is equally possible that the district judge not only wrote down the wrong standard but also applied that wrong standard as well. Indeed, both the deferential language used by the district court (noting several times that it "agrees" with the magistrate judge's conclusions), as well as the court's cursory treatment of the

legal issues (one short paragraph on inevitable discovery, and one even shorter paragraph on alleged

*Miranda* violations), tend to indicate that the district court did what it said it would do: namely,

conduct a <u>clearly erroneous</u> review of the magistrate judge's report and recommendation. And

because the proper standard of review in such a case is indisputably de novo, *see Curtis*, 237 F.3d

at 603, the district court applied the incorrect standard in reviewing the magistrate judge's report.

In light of this error, we cannot simply bypass the district court's decision and review directly

the magistrate judge's denial of Quinney's suppression motion. Rather, several on-point precedents

clearly hold that vacatur and remand to the district court is the proper approach. For example, in

*Flournoy v. Marshall*, we stated as follows:

> [B]y failing to review the magistrate's report under the appropriate "de novo"
> standard, the district judge has failed to fulfill his duties as an Article III judge.
> Although Congress did intend the magistrates to lend assistance to the overburdened
> district courts when appropriate, the carefully drafted statutory standards for review
> of the magistrate's findings are meant to insure that the district courts will not
> abdicate their responsibility. Due to the great importance of adherence to the express
> provisions of section 636(b), we VACATE the decision of the district court in all
> three of these cases and REMAND to the district court for a "de novo" review of the
> record for at least those objections set forth by the parties and for further proceedings
> consistent herewith.

842 F.2d 875, 878-79 (6th Cir. 1988). *See also id.* at 878 ("[A]s the statutory design and legislative

history of the Federal Magistrates Act [codified at 28 U.S.C. § 636] makes evident, Congress

intended the standards for review of a magistrate's findings to be taken seriously and applied in

accord with the express language set forth in that statute."); *Powell v. United States*, 37 F.3d 1499,

1994 WL 532926, at *1-2 (6th Cir. Sept. 30, 1994) (Table) ("In this case, the district court expressly

stated that the magistrate judge's report was not clearly erroneous. Accordingly, we vacate the

district court's order and remand the case so that the district court may apply the proper standard of review to the magistrate judge's report and recommendation regarding [defendant's] motion."). Our decision in *Curtis* is also consistent with the approach taken in *Flournoy*, despite the fact that *Curtis* presented this court with the converse of what has happened here — i.e., in *Curtis* the district court applied de novo review to an issue in the magistrate judge's report, when it should have applied clearly erroneous review. *See Curtis*, 237 F.3d at 604 ("Remand is necessary to allow the [district] court to examine the magistrate court's findings under the proper standard [of review] . . . .").

### III.

For all of the reasons stated above, we **VACATE** the decision of the district court and **REMAND** for its re-examination of the magistrate judge's conclusions as to Quinney's motion to suppress, this time applying the proper de novo standard of review.