**VAN LE, Plaintiff,**

v.

**Maggie BEIGHTLER, Defendant.**

**Case No. 1:08 CV 2155.**

United States District Court, N.D. Ohio, Western Division.

Dec. 14, 2009.

**932**

Katherine A. Szudy, Office of the Public Defender, Columbus, OH, for Plaintiff.

Maggie Beightler, Marion, OH, pro se.

William H. Lamb, Office of the Attorney General, Cincinnati, OH, for Defendant.

## MEMORANDUM OPINION

KATZ, District Judge.

This matter is before the Court on Petitioner Van Le's objections (Doc. 10) to the September 9, 2009, Report and Recommendation ("R & R") of the United States Magistrate Judge (Doc. 9), recommending that the Court deny the petition for a writ of habeas corpus. In accordance with *United States v. Curtis*, 237 F.3d 598, 603 (6th Cir.2001) and 28 U.S.C. § 636(b)(1)(B) & (C), this Court has made a *de novo* determination of the Magistrate Judge's findings to which the Plaintiff objects. For the following reasons, the Court finds Plaintiff's objections are not well taken and the same are denied.

### I. Background

The Court hereby adopts the Magistrate Judge's description of the factual and procedural background of this case, as Le does not contest this portion of the R & R:

#### I. Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts "shall be presumed to be correct." 28 U.S.C. § 2254(e)(1); see also *House v. Bell*, 283 F.3d 37 [738] (6th Cir.2002). The state appellate court summarized the facts underlying Le's conviction as follows:

{¶ 2} On November 16, 2003, Mr. Le drove his vehicle to a store located at 6402 Lorain Avenue in Cleveland, Ohio, which was owned and operated by victim Srey Trinh. While in the parking lot, Mr. Le opened the hood of Trinh's vehicle and removed the spark plugs. Mr. Le then entered the store and approached the counter with a CD in his hand. When Trinh turned away from Mr. Le, he attacked

her with a pipe, beating her repeatedly for approximately five minutes. During the beating, Mr. Le asked Trinh if she wanted to die. Mr. Le then removed $160.00 from the cash register and fled the store. Store surveillance captured the attack on video.

{¶ 3} Trinh managed to get herself to a neighboring bar where witnesses called 911. One witness ran after Mr. Le and documented his license plate number as he drove off. Trinh was transported to Metro Hospital where hospital staff treated her for serious injuries to her head, arms, and hands. The victim spent five days at Metro and then spent an additional five days in a rehabilitation facility/nursing home. At the time of this appeal, Trinh still suffered from physical and mental trauma.

(Doc. No. 7–3, Exh. 6, ¶¶ 2–3.)

## II. Procedural History

### A. Conviction

On December 24, 2003, a Cuyahoga County Grand Jury indicted Le on one count of aggravated robbery, two counts of felonious assault, one count of kidnapping, one count of resisting arrest, and one count of attempted aggravated murder. (Resp. Exh. 1.)

On February 27, 2004, Le entered a plea of guilty to aggravated robbery and one of the two felonious assault charges. (Resp. Exh. 2.) The state nolled the remaining counts. *Id.* On March 10, 2004, Le was sentenced to ten years for aggravated robbery and eight years for felonious assault. The prison terms were ordered to be served consecutively, for an aggregate sentence of eighteen years. (Resp. Exh. 3.)

### B. Direct Appeal

Le, through counsel, filed a timely Notice of Appeal with the Court of Ap-

peals for the Eighth District ("state appellate court") raising the following assignments of error:

1. The trial court committed prejudicial error in violation of R.C. 2929.14 by imposing maximum, consecutive sentences.

2. The record does not clearly and convincingly support the court's conclusion that the maximum consecutive sentence imposed in this case is consistent with sentences imposed in similar cases with similar offender [sic] in contravention of R.C. 2929.11(B) and *State v. Comer* (2003), 99 Ohio St.3d 463 [793 N.E.2d 473].

3. Appellant's sentence was imposed in violation of the Fifth, Sixth and Fourteenth amendments to the United States Constitution and *Blakely v. Washington* (2004) [542 U.S. 296], 124 S.Ct. 2531 [159 L.Ed.2d 403], since appellant's maximum, consecutive sentence was based on judicial finding, as opposed to jury finding and/or stipulations.

4. Appellant's trial counsel was ineffective and/or the trial court committed plain error in failing to recognize appellant's defense of voluntary intoxication.

(Resp. Exh. 4.) On March 14, 2005, the state appellate court affirmed Le's conviction. (Resp. Exh. 6.)

On April 22, 2005, Le, through counsel, filed a Notice of Appeal to the Ohio Supreme Court raising a single proposition of law:

A trial court that imposes a sentence by using factors which are not found by a jury or admitted by the defendant violates the defendant's rights to due process and a jury trial under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

(Resp. Exh. 7.) The Ohio Supreme Court accepted the appeal, *sua sponte.* (Resp. Exh. 9.) On May 3, 2006, the case was reversed and remanded to the trial court for resentencing consistent with *State v. Foster,* 109 Ohio St.3d 1, 845 N.E.2d 470 (2006). (Resp. Exh. 10.)

## C. Resentencing

On August 28, 2006, Le, represented by different counsel, was resentenced in the Cuyahoga County Common Pleas Court to the same term of incarceration as originally imposed. (Resp. Exh. 11.)

Le, through counsel, filed a timely Notice of Appeal in the Eighth District Court of Appeals, Cuyahoga County, Ohio raising two assignments of error:

1. The trial court erred by imposing non-minimum, maximum, and consecutive sentences in violation of the Due Process and Ex Post Facto clauses of the United States Constitution, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution; *Blakely v. Washington* (2004), 542 U.S. 296 [124 S.Ct. 2531, 159 L.Ed.2d 403]; *United States v. Booker* (2005), 543 U.S. 220 [125 S.Ct. 738, 160 L.Ed.2d 621].

2. The trial court did not have the authority to impose consecutive sentences.

(Resp. Exh. 12.) On August 20, 2007, the sentence was affirmed. (Resp. Exh. 15.)

Le, through counsel, filed a timely appeal to the Ohio Supreme Court, raising two propositions of law:

I. The remedy that this Court set forth in *State v. Foster,* 109 Ohio St.3d 1 [845 N.E.2d 470], 2006–Ohio–856 violates the Ex Post Facto and Due Process Clauses of the United States Constitution.

II. Trial courts do not have the authority to impose consecutive sentences.

(Resp. Exh. 16.) On December 26, 2007, 116 Ohio St.3d 1457, 878 N.E.2d 34 (2007), the appeal was dismissed "as not involving any substantial constitutional question." (Resp. Exh. 17.)

## D. Federal Habeas Petition

Le, through counsel, filed a timely Petition for Writ of Habeas Corpus asserting the following ground for relief:

**Ground One:** The remedy that the Ohio Supreme Court set forth in *State v. Foster,* 109 Ohio St.3d 1, 845 N.E.2d 470 (Ohio Sup.Ct.2006) violates the Ex Post Facto and Due Process Clauses of the United States Constitution.

**Supporting Facts,** in pertinent part:

In accordance with its decision in *State v. Foster,* the Ohio Supreme Court reversed and remanded Mr. Le's case for resentencing. But on November 16, 2003, the date on which the offenses occurred in this case, the factual findings mandated by Ohio Rev.Code Ann. § 2929.14(B); R.C. 2929.14(C); and R.C. 2929.14(E) (2003) were required to be made at a sentencing hearing and in a journal entry of conviction. As such, during Mr. Le's resentencing hearing, the trial court was required to sentence him under the Senate Bill 2 provisions that were in effect at the time of his purported crimes. Any sentence that included non-minimum, maximum, or consecutive prison terms—but omitted the findings required by Ohio Rev. Code Ann. § 2929.14(B); R.C. 2929.14(C); or R.C. 2929.14(E)(4) (2003)—violated the Ex Post Facto

and Due Process Clauses of the United States Constitution.

(Doc. No. 1, pp. 14, 16.)

The Magistrate recommended denying the writ. This Court conducts a *de novo* review of the Magistrate's R & R. 28 U.S.C. § 636(b)(1)(C); *United States v. Curtis,* 237 F.3d 598, 603 (6th Cir.2001).

## II. Standard of Review

The standards set forth in Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), 28 U.S.C. § 2254(d), govern a federal district court's review of a state court decision on a writ of habeas corpus. *French v. Jones,* 332 F.3d 430, 435–436 (6th Cir.2003). The statute establishes two circumstances in which a federal court may issue a writ. First, a federal court may issue a writ if the state court's decision "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). Second, a federal court may issue a writ if the state court's decision was based on an unreasonable determination of the facts in light of the evidence. § 2254(d)(2).

A state court's decision is "contrary to" the clearly established federal law when either the decision contradicts the Supreme Court's holdings or it " 'confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from this precedent.' " *Stewart v. Erwin,* 503 F.3d 488, 493 (6th Cir.2007) (quoting *Mitchell v. Esparza,* 540 U.S. 12, 15–16, 124 S.Ct. 7, 157 L.Ed.2d 263 (2003) (per curiam)). A state court's decision unreasonably applies Supreme Court holdings "if the state court identifies the correct governing legal principle from the Supreme Court but unreasonably applies that principle to the facts of petitioner's case." *Id.* (quoting *Wiggins v. Smith,* 539 U.S.

510, 520, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (internal quotation marks omitted)).

"[A] determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). The petitioner, however, may rebut "the presumption of correctness by clear and convincing evidence." *Id.*

## III. Discussion

In his Objection, Petitioner renews his argument that his resentencing under *State v. Foster,* 109 Ohio St.3d 1, 845 N.E.2d 470 (2006) violated his right to due process of law under the Fourteenth Amendment and Ex Post Facto Clause. He argues that *Foster* represents the sort of "unexpected and indefensible" retroactive judicial enlargement of a criminal statute that is condemned by the Fourteenth Amendment's Due Process Clause. See *Bouie v. Columbia,* 378 U.S. 347, 354, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964).

The Ohio Supreme Court's decision in *Foster* was necessitated by the U.S. Supreme Court's decision in *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). Prior to *Blakely,* Ohio, like many other states and the federal government, required sentencing a defendant to minimum and concurrent terms of incarceration within the sentencing range for a given crime, unless the sentencing court determined that certain factors mandated longer and consecutive sentences. This regime called for judicial factfinding of the sort prohibited by *Blakely.* In *Foster,* the Ohio Supreme Court severed these unconstitutional provisions from the rest of the sentencing scheme and directed sentencing courts as follows:

> Courts shall consider those portions of the sentencing code that are unaffected by today's decision and impose any sentence within the appropriate felony range. If an offender is sentenced to

multiple prison terms, the court is not barred from requiring those terms to be served consecutively.

*Foster,* 109 Ohio St.3d at 30, 845 N.E.2d 470. In the instant case, the sentencing court re-sentenced Le to the same sentence it had imposed before, except without making specific findings of fact, as was appropriate under *Foster.*

The Supreme Court announced the applicable test for measuring whether a retroactive judicial enlargement of a criminal statute violates the Fourteenth Amendment in *Rogers v. Tennessee,* 532 U.S. 451, 459, 121 S.Ct. 1693, 149 L.Ed.2d 697 (2001). In *Rogers,* the Court severely limited its prior holding in *Bouie,* interpreting that earlier decision as having "rested on core due process concepts of notice, foreseeability, and, in particular, the right to fair warning as those concepts bear on the constitutionality of attaching criminal penalties to what previously had been innocent conduct." Thus, the Court's holding in *Bouie* was grounded on the fact that the South Carolina Supreme Court in *Bouie* had retroactively criminalized conduct that was previously innocent without "fair warning." *Rogers,* 532 U.S. at 457–458, 121 S.Ct. 1693.

Under *Bouie,* as reconstructed by *Rogers,* the Ohio Supreme Court's action in *Foster* did not deprive Le of "fair warning" that his conduct was criminal. *Foster* did not criminalize any conduct that was previously innocent, nor did it increase the maximum penalty for any crime. Additionally, the *Foster* Court directed that judges be guided in their new discretion by the same sentencing factors that had previously justified upward departures. *Foster,* 109 Ohio St.3d 1, 30, 845 N.E.2d 470. Indeed, Le received the same penalty for his crime prior to *Foster* as he did afterwards. Both before and after *Foster,* Le had clear notice of both the illegality and the severity of his criminal acts. Thus, Le's resentenc-ing did not violate the Fourteenth Amendment. Cf. *Dobbert v. Florida,* 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977) (Procedural changes in the role of judge and jury in death penalty sentencing do not violate the Ex Post Facto Clause).

## IV. Conclusion

For the above stated reasons, the findings and recommendations of the Magistrate are adopted. Furthermore, the Court has determined *sua sponte* that no certificate of probable cause should issue in this case, as any appeal would lack substantial merit. Le's petition for a writ of habeas corpus is therefore denied.

IT IS SO ORDERED.

## REPORT AND RECOMMENDATION

GREG WHITE, United States Magistrate Judge.

Petitioner, Van Le ("Le"), through counsel, challenges the constitutionality of his sentence in the case of *State v. Le,* Cuyahoga County Court of Common Pleas Case No. CR03–446935. Le filed his Petition for a Writ of Habeas Corpus (Doc. No. 1) pursuant to 28 U.S.C. § 2254 on September 8, 2008. On January 7, 2009, Warden Maggie Beightler ("Respondent") filed her Answer/Return of Writ. (Doc. No. 7.) Le filed a Traverse on January 27, 2009. (Doc. No. 8.) This matter is before the undersigned Magistrate Judge pursuant to Local Rule 72.2. For reasons set forth in detail below, it is recommended that Le's Petition be denied.

### I. Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts "shall be presumed to be correct." 28 U.S.C. § 2254(e)(1); *see also House v. Bell,* 283 F.3d 738 (6th Cir.2002). The state appel-

late court summarized the facts underlying Le's conviction as follows:

{¶ 2} On November 16, 2003, Mr. Le drove his vehicle to a store located at 6402 Lorain Avenue in Cleveland, Ohio, which was owned and operated by victim Srey Trinh. While in the parking lot, Mr. Le opened the hood of Trinh's vehicle and removed the spark plugs. Mr. Le then entered the store and approached the counter with a CD in his hand. When Trinh turned away from Mr. Le, he attacked her with a pipe, beating her repeatedly for approximately five minutes. During the beating, Mr. Le asked Trinh if she wanted to die. Mr. Le then removed $160.00 from the cash register and fled the store. Store surveillance captured the attack on video.

{¶ 3} Trinh managed to get herself to a neighboring bar where witnesses called 911. One witness ran after Mr. Le and documented his license plate number as he drove off. Trinh was transported to Metro Hospital where hospital staff treated her for serious injuries to her head, arms, and hands. The victim spent five days at Metro and then spent an additional five days in a rehabilitation facility/nursing home. At the time of this appeal, Trinh still suffered from physical and mental trauma.

(Doc. No. 7–3, Exh. 6, ¶¶ 2–3.)

## II. Procedural History

### A. Conviction

On December 24, 2003, a Cuyahoga County Grand Jury indicted Le on one count of aggravated robbery, two counts of felonious assault, one count of kidnapping, one count of resisting arrest, and one count of attempted aggravated murder. (Resp. Exh. 1.)

On February 27, 2004, Le entered a plea of guilty to aggravated robbery and one of the two felonious assault charges. (Resp. Exh. 2.) The state nolled the remaining counts. *Id.* On March 10, 2004, Le was sentenced to ten years for aggravated robbery and eight years for felonious assault. The prison terms were ordered to be served consecutively, for an aggregate sentence of eighteen years. (Resp. Exh. 3.)

### B. Direct Appeal

Le, through counsel, filed a timely Notice of Appeal with the Court of Appeals for the Eighth District ("state appellate court") raising the following assignments of error:

1. The trial court committed prejudicial error in violation of R.C. 2929.14 by imposing maximum, consecutive sentences.

2. The record does not clearly and convincingly support the court's conclusion that the maximum consecutive sentence imposed in this case is consistent with sentences imposed in similar cases with similar offender [sic] in contravention of R.C. 2929.11(B) and *State v. Comer* (2003), 99 Ohio St.3d 463, [793 N.E.2d 473].

3. Appellant's sentence was imposed in violation of the Fifth, Sixth and Fourteenth amendments to the United States Constitution and *Blakely v. Washington* (2004) [542 U.S. 296], 124 S.Ct. 2531 [159 L.Ed.2d 403], since appellant's maximum, consecutive sentence was based on judicial finding, as opposed to jury finding and/or stipulations.

4. Appellant's trial counsel was ineffective and/or the trial court committed plain error in failing to recognize appellant's defense of voluntary intoxication.

(Resp. Exh. 4.) On March 14, 2005, the state appellate court affirmed Le's conviction. (Resp. Exh. 6.)

On April 22, 2005, Le, through counsel, filed a Notice of Appeal to the Ohio Supreme Court raising a single proposition of law:

A trial court that imposes a sentence by using factors which are not found by a jury or admitted by the defendant violates the defendant's rights to due process and a jury trial under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

(Resp. Exh. 7.) The Ohio Supreme Court accepted the appeal, *sua sponte.* (Resp. Exh. 9.) On May 3, 2006, the case was reversed and remanded to the trial court for resentencing consistent with *State v. Foster*, 109 Ohio St.3d 1, 845 N.E.2d 470 (2006). (Resp. Exh. 10.)

## C. Resentencing.

On August 28, 2006, Le, represented by different counsel, was resentenced in the Cuyahoga County Common Pleas Court to the same term of incarceration as originally imposed. (Resp. Exh. 11.)

Le, through counsel, filed a timely Notice of Appeal in the Eighth District Court of Appeals, Cuyahoga County, Ohio raising two assignments of error:

1. The trial court erred by imposing non-minimum, maximum, and consecutive sentences in violation of the Due Process and *Ex Post Facto* clauses of the United States Constitution, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution; *Blakely v. Washington* (2004), 542 U.S. 296 [124 S.Ct. 2531, 159 L.Ed.2d 403]; *United States v. Booker* (2005), 543 U.S. 220 [125 S.Ct. 738, 160 L.Ed.2d 621].

2. The trial court did not have the authority to impose consecutive sentences.

(Resp. Exh. 12.) On August 20, 2007, the sentence was affirmed. (Resp. Exh. 15.)

Le, through counsel, filed a timely appeal to the Ohio Supreme Court, raising two propositions of law:

I. The remedy that this Court set forth in *State v. Foster*, 109 Ohio St.3d 1 [845 N.E.2d 470], 2006–Ohio–856 violates the *Ex Post Facto* and Due Process Clauses of the United States Constitution.

II. Trial courts do not have the authority to impose consecutive sentences.

(Resp. Exh. 16.) On December 26, 2007, the appeal was dismissed "as not involving any substantial constitutional question." (Resp. Exh. 17.)

## D. Federal Habeas Petition

Le, through counsel, filed a timely Petition for Writ of Habeas Corpus asserting the following ground for relief:

**Ground One:** The remedy that the Ohio Supreme Court set forth in *State v. Foster*, 109 Ohio St.3d 1, 845 N.E.2d 470 (Ohio Sup.Ct.2006) violates the *Ex Post Facto* and Due Process Clauses of the United States Constitution.

**Supporting Facts,** in pertinent part:

In accordance with its decision in *State v. Foster*, the Ohio Supreme Court reversed and remanded Mr. Le's case for resentencing. But on November 16, 2003, the date on which the offenses occurred in this case, the factual findings mandated by Ohio Rev.Code Ann. § 2929.14(B); R.C. 2929.14(C); and R.C. 2929.14(E) (2003) were required to be made at a sentencing hearing and in a journal entry of conviction. As such, during Mr. Le's resentencing hearing, the trial court was required to sentence him under the Senate Bill 2 provisions that were in effect at the time of his purported crimes. Any sentence that included non-minimum, maximum, or consecutive prison terms—but omitted the findings required by Ohio Rev.Code Ann. § 2929.14(B); R.C. 2929.14(C); or

R.C. 2929.14(E)(4) (2003)—violated the *Ex Post Facto* and Due Process Clauses of the United States Constitution.

(Doc. No. 1, pp. 14, 16.)

### III. Review on the Merits

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. *See Lindh v. Murphy,* 521 U.S. 320, 326–27, 337, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

■■■■ Clearly established federal law is to be determined by the holdings of the United States Supreme Court. *See Williams v. Taylor,* 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Ruimveld v. Birkett,* 404 F.3d 1006, 1010 (6th Cir.2005). However, an explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law." *Ruimveld,* 404 F.3d at 1010, *quoting Taylor v. Withrow,* 288 F.3d 846, 852 (6th Cir.2002).

■■■■ A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id.* at 413, 120 S.Ct. 1495. By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411, 120 S.Ct. 1495. Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law. *Id.* at 410–12, 120 S.Ct. 1495. "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher,* 162 Fed.Appx. 511, 516 (6th Cir.2006), *citing Herbert v. Billy,* 160 F.3d 1131, 1135 (6th Cir.1998).

### IV. Analysis

Le was convicted of aggravated robbery, a first degree felony, and felonious assault, a second degree felony. In Ohio, the sentencing range for a first degree felony is from three to ten years, and for a second degree felony, two to eight years imprisonment. O.R.C. § 2929.14(A)(1), (2).

At the time of Le's conviction and original sentencing, Ohio statutes provided that a minimum sentence must be imposed unless the court finds that the defendant previously served a prison term or that the

shortest prison term would demean the seriousness of the offender's conduct or would not adequately protect the public from future crime by the offender or others. *See* O.R.C. § 2929.14(B). Further, O.R.C. § 2929.14(C) stated, in pertinent part: "... the court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of the offense, [or] upon offenders who pose the greatest likelihood of committing future crimes ...." Finally, consecutive, non-mandatory prison terms could be imposed on defendants when the sentencing court made findings that: "... consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:" (a) the offender committed one or more of the offenses while the offender was awaiting trial or sentencing, or while under supervision; (b) at least two of the offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct; or (c) the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender. O.R.C. § 2929.14(E)(4).

The United States Supreme Court has clearly established that, except for the existence of a prior conviction, facts supporting the increase of a sentence beyond the "statutory maximum" must be admitted by the defendant or proven to a jury beyond a reasonable doubt. *See Blakely v. Wash-*

*ington,* 542 U.S. 296, 303–04, 124 S.Ct. 2531, 2541, 159 L.Ed.2d 403 (2004); *Apprendi v. New Jersey,* 530 U.S. 466, 489, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

*Apprendi v. New Jersey* involved a New Jersey hate crime statute that permitted a twenty-year sentence, rather than the usual ten-year maximum, if the judge determined the crime was committed "with a purpose to intimidate * * * because of race, color, gender, handicap, religion, sexual orientation or ethnicity." Apprendi at 468–69 (citations omitted). The United States Supreme Court found that Apprendi's sentence violated his Sixth Amendment right to a jury trial because it exceeded the statutory maximum sentence based upon judicial factfinding. The *Apprendi* Court ruled that the jury, rather than the judge, must find all of the facts essential to punishment. "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490, 120 S.Ct. 2348. The *Apprendi* Court was careful to state that the ruling does not remove all discretion from sentencing judges:

> ... nothing in this history [of sentencing procedures] suggests that it is impermissible for judges to exercise discretion-taking into consideration various factors relating both to offense and offender-in imposing a judgment *within the range* prescribed by statute. We have often noted that judges in this country have long exercised discretion of this nature in imposing sentence *within statutory limits* in the individual case. *See, e.g., Williams v. New York,* 337 U.S. 241, 246, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949)

*Id.* at 481, 120 S.Ct. 2348 (emphasis in original).

In *Blakely v. Washington*, the defendant was sentenced to approximately three years more than the applicable standard sentencing range because the judge determined Blakely had acted with "deliberate cruelty." *Blakely*, 542 U.S. at 298, 124 S.Ct. 2531. The facts supporting that finding were neither admitted by the defendant nor found by a jury. Thus, the judge could not have imposed the "exceptional" sentence without engaging in unconstitutional factfinding. *Id.* at 304, 124 S.Ct. 2531. The United States Supreme Court extended the rule in *Apprendi* by defining the "statutory maximum" to be "the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Id.* at 303, 124 S.Ct. 2531. "In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings." *Id.* When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment, [citation omitted]," and the judge exceeds his proper authority. *Id.* at 304, 124 S.Ct. 2531.

The Supreme Court further ruled in *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) that the Sixth Amendment as construed in *Blakely* applied to the Federal Sentencing Guidelines. Thus the Court held that the Sentencing Guidelines were unconstitutional insofar as they mandated that a defendant's sentence be increased based upon judicial factfinding rather than facts found by a jury beyond a reasonable doubt. *Id.* at 243–44, 125 S.Ct. 738. To remedy the Sixth Amendment violation, the Supreme Court severed two sections of the Sentencing Reform Act, effectively making the Sentencing Guidelines advisory. *See id.* at 244–264, 125 S.Ct. 738 (severing and excising 18 U.S.C. § 3553(b)(1) & § 3742(e)).

On February 27, 2006, the Ohio Supreme Court decided *Foster* which struck down O.R.C. § 2929.14(B), (C) and (E)(4), among other sections, as unconstitutional under *Blakely* because they required a court to make findings, not determined by a jury beyond a reasonable doubt, before the imposition of certain sentences on an offender who had never been to prison. *Foster*, 109 Ohio St.3d at 26, 845 N.E.2d 470. The Ohio Supreme Court, applying a remedy similar to that adopted in *Booker*, severed O.R.C. § 2929.14(B), (C) and (E)(4) thereby allowing trial courts full discretion to impose a prison sentence within the statutory range without making findings or giving reasons for exceeding the minimum sentence. *Id.* at 30, 845 N.E.2d 470. The *Foster* Court held that its ruling must be applied to all cases, like Le's, still on direct review or not yet final. *Id.* at 31, 845 N.E.2d 470.

Thus, since Le had not previously served a prison term, the court at the original sentence in March 2004 was required to impose the shortest prison term authorized for each offense[1] unless it found that doing so would demean the seriousness of Le's conduct or would not adequately protect the public. Not only did the court make the necessary findings under O.R.C. § 2929.14(B) to avoid the otherwise mandated minimum sentence, but it went on to make the findings required by O.R.C. § 2929.14(C) and (E)(4) in order to impose maximum, consecutive terms of imprisonment.[2] In other words,

---

**1.** Pursuant to O.R.C. § 2929.14(A)(1), the shortest prison term is three years for aggravated robbery and two years for felonious assault.

**2.** Pursuant to O.R.C. § 2929.14(A)(1), the longest prison term is ten years for aggravated robbery and eight years for felonious assault.

without the findings Le's sentence would have been three years as opposed to the eighteen he received. On remand, he was sentenced to the same eighteen year term, but without the necessity of any findings under the above mentioned sections severed by the *Foster* Court.

■ Le argues that the "statutory maximums" as defined by *Blakely* were significantly higher when applied to him after the *Foster* decision. This unforeseeable judicial enlargement of Ohio statutes, he argues, violates the *Ex Post Facto* and Due Process Clauses of the United States Constitution. Respondent argues that the statutory ranges applicable to Le's offenses remained unchanged after *Foster.*

■ The United States Constitution specifically prohibits states from passing *ex post facto* laws. U.S. Const., Art. I, § 10, cl. 1. The Constitution's bar against *ex post facto* laws, however, does not apply to courts:

> The *Ex Post Facto* Clause, by its own terms, does not apply to courts. Extending the Clause to courts through the rubric of due process ... would circumvent the clear constitutional text. It also would evince too little regard for the important institutional and contextual differences between legislating, on the one hand, and common law decisionmaking, on the other.

*Rogers v. Tennessee,* 532 U.S. 451, 460, 121 S.Ct. 1693, 149 L.Ed.2d 697 (2001)

■ Although the *Ex Post Facto* Clause does not apply to courts, "limitations on *ex post facto* judicial decisionmaking are inherent in the notions of due process." *Id.* at 456, 121 S.Ct. 1693. In particular, the Supreme Court has found that a court may

not unexpectedly and indefensibly construe a criminal statute so as to criminalize conduct which had not been criminal prior to the court's new construction. *See Bouie v. City of Columbia,* 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964).[3] Such a *post hoc* criminalization of previously-innocent acts fails to give defendants fair warning of the punitive consequences of their behavior. The Supreme Court has explicitly declined, however, to apply all the protections of the *Ex Post Facto* Clause to courts by way of the Due Process Clause. *Id.* at 458–461, 121 S.Ct. 1693. These judicial limitations are most concisely reflected in the basic principle of fair warning. The *Rogers* Court rested its rationale on "core concepts of notice, foreseeability, and in, particular, the right to fair warning as those concepts bear on the constitutionality of attaching criminal penalties to what previously had been innocent conduct." *Id.* at 459, 121 S.Ct. 1693.

Upon appeal, Le's second sentence was affirmed by the Eighth District Court of Appeals. Although that court referred to no federal constitutional law, it relied on *State v. Mallette,* 2007 WL 530187 (8th Dist.Ohio, Feb. 22, 2007), which did engage in a federal constitutional analysis in concluding that the *Foster* severance, applying the *Booker* remedy, did not violate the *Ex Post Facto* or Due Process Clauses as claimed by Le. (Resp. Exh. 15, ¶¶ 9–13.)

Le asserts that his sentence violates *Miller v. Florida,* 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987). The *Miller* Court found that a defendant sentenced under Florida's amended sentencing statute for criminal acts committed prior to the statute's revision violated the *Ex Post*

---

**3.** While the *Bouie* Court held that a defendant may only be punished for acts that were criminal at the time the defendant performed them, the Court also held that unconstitutional statutes may nevertheless give a defendant fair warning of the penalties that a state may seek to impose on a defendant. *See Dobbert v. Florida,* 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977); *United States v. Duncan,* 400 F.3d 1297, 1307–08 (11th Cir.2005).

*Facto* Clause. Florida's statutes assigned points for various offenses and factors relevant to those offenses. A defendant's point score created a presumptive range of sentences. A judge, without explanation, could sentence a defendant to any term within that range. However, if the judge departed from that range, the statute required the judge to make a written explanation. Miller was convicted of a sexual battery at a time when the presumptive range for his acts was 3–1/2 to 4–1/2 years. The legislature subsequently increased the presumptive range to 5–1/2 to 7 years. The sentencing court imposed a 7–year sentence without explanation. The Supreme Court found that the application of the revised guidelines to *Miller* violated the *Ex Post Facto* Clause.

Le's claim here is distinguishable as it involves the retroactive application of a judicial decision rather than a legislative act. *See Rogers,* 532 U.S. at 460, 121 S.Ct. 1693; *Woody v. Welch,* 2009 WL 1440828, Case No. 3:08cv2534, *9 (N.D.Ohio May 20, 2009).

While neither the Sixth Circuit nor the United States Supreme Court has addressed the issue of whether the *Foster* decision is tantamount to an *ex post facto* law, the Sixth Circuit has repeatedly held that the retroactive application of the similar remedial ruling in *Booker* does not raise an *ex post facto* issue. *See United States v. Hill,* 209 Fed.Appx. 467, 468 (6th Cir.2006); *United States v. Barton,* 455 F.3d 649, 657 (6th Cir.2006); *United States v. Shepherd,* 453 F.3d 702, 705–06 (6th Cir.2006); *See also U.S. v. Sexton,* 512 F.3d 326, 331 (6th Cir.2008).

In *Barton,* 455 F.3d 649, the Court began by construing *Bouie* in light of the Supreme Court's holding in *Rogers v. Tennessee.* From these two Supreme Court decisions, the Court held that "when addressing *ex post facto*-due process concerns, questions of notice, foreseeability,

and fair warning are paramount." *Barton,* 455 F.3d at 655, *citing Rogers,* 532 U.S. at 459, 121 S.Ct. 1693. The Sixth Circuit then concluded that because *Blakely* had been decided prior to the defendant's conviction, it "would not have been a leap in logic to expect the Supreme Court to apply *Blakely*" to the federal sentencing guidelines in some manner and, so, due process was not violated. *Id.* at 653–54.

The Ohio Supreme Court also recently addressed the *ex post facto* and due process issues when a defendant is resentenced under *Foster* for an earlier offense. The Court found there was no violation of a Sixth Amendment right to a jury trial. It also held that neither the *Ex Post Facto* nor Due Process Clauses were violated. *State v. Elmore,* 122 Ohio St.3d 472, 912 N.E.2d 582 (2009). The *Elmore* Court concluded that the defendant had notice of the sentencing range, which was the same at the time he committed the crimes as when he was resentenced. *Id.* at 588–89.

While the Ohio Supreme Court's interpretation of federal law is not binding on this Court, the *Elmore* decision is persuasive. Moreover, Ohio federal district courts have also rejected *ex post facto* challenges to the retroactive application of judicial reconstruction of a statute. *See, e.g., Keith v. Voorhies,* 1:06CV2360, 2009 WL 185765, at *12, 2009 U.S. Dist. LEXIS 4726, at *34 (N.D.Ohio Jan. 23, 2009) (Lioi, J.); *Watkins v. Williams,* 2008 WL 2484188, 2008 U.S. Dist. LEXIS 47557 (N.D.Ohio Jun. 17, 2008) (Adams, J.); *Lyles v. Jeffreys,* 2008 WL 1886077, 2008 U.S. Dist. LEXIS 33822 (N.D.Ohio Apr. 24, 2008) (Oliver, J.); *Smith v. Moore,* 2008 WL 3890009, Case No. 3:07CV1121 (N.D.Ohio Aug. 19, 2008) (Adams, J.); *Hooks v. Sheets,* 2008 WL 4533693, 2008 U.S. Dist. LEXIS 77612 (S.D.Ohio Oct. 3, 2008) (Beckwith, J.). As noted in *Rettig v.*

*Jefferys,* 2007 U.S. Dist. LEXIS 97648, 24–25 (N.D.Ohio Dec. 17, 2007):

> Ohio courts have uniformly rejected *ex post facto* challenges to the *Foster* decision. *See, e.g., State v. Swann,* 171 Ohio App.3d 304, 314, 2007 Ohio 2010, 870 N.E.2d 754, 762 (Ohio Ct.App.2007); *State v. Sharp,* 2007 Ohio 6324, 2007 WL 4200755, at *2 (Ohio Ct.App.2007); *State v. McGhee,* 2006 Ohio 5162, 2006 WL 2796275, at *7 (Ohio Ct.App.2006). *See generally United States v. Barton,* 455 F.3d 649, 657 (6th Cir.), *cert. denied,* 549 U.S. 1087, 127 S.Ct. 748, 166 L.Ed.2d 579 (2006) (*United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), does not violate *ex post facto* ). The court in *McGhee* found no *ex post facto* violation because the defendant "knew the potential statutory sentence for committing a first degree felony, because he had notice that Ohio's sentencing statutes were subject to judicial scrutiny, and because [he] was unlikely to amend his criminal behavior in light of a sentencing change." *McGhee,* 2006 Ohio 5162, 2006 WL 2796275, at *7. In *Sharp,* the court noted that "the sentencing range was the same at the time [the defendant] committed the offenses as when he was sentenced," and *Foster* "did not judicially increase the range of his sentence." *Sharp,* 2007 Ohio 6324, 2007 WL 4200755, at *2.

The *Lyles* Court noted that, although Ohio's sentencing statutes may have been unconstitutional at the time the defendant was sentenced, Ohio law "gave [petitioner] fair notice of the acts that were prohibited and the degree of punishment which the Ohio legislature wished to impose on those who committed those acts." 2008 WL 1886077, at *2, 2008 U.S. Dist. LEXIS 33822 at *4.

Other federal defendants have alleged that the sentencing statutes reshaped by *Booker* violate due process as defendants are subjected to *ex post facto* laws. Those challenges have been universally rejected. *See United States v. Scroggins,* 411 F.3d 572, 575–78 (5th Cir.2005); *United States v. Jamison,* 416 F.3d 538, 539 (7th Cir. 2005); *United States v. Dupas,* 417 F.3d 1064, 1068–69 (9th Cir.2005); *United States v. Rines,* 419 F.3d 1104, 1106 (10th Cir.2005); *Duncan,* 400 F.3d at 1306–08; and *United States v. Alston–Graves,* 435 F.3d 331, 343 (D.C.Cir.2006). Le makes no argument that distinguishes in any material aspect Ohio's revised sentencing statutes from the revised federal sentencing statutes upheld by the appellate courts. The sentences Le ultimately received for each conviction were within the range permitted by statute at the time the offenses were committed. Although Ohio's sentencing statutes at the time of Le's criminal acts may have been, in part, unconstitutional, they nevertheless gave him fair notice of the acts that were prohibited and the degree of punishment which the Ohio legislature wished to impose on those who committed such acts. The *Foster* remedy did not increase the maximum penalty to which Le was potentially facing. *See Alston–Graves,* 435 F.3d at 343; *United States v. Vaughn,* 430 F.3d 518, 524–25 (2d Cir.2005); *United States v. Lata,* 415 F.3d 107, 112 (1st Cir.2005).

Moreover, the state appellate court accurately concluded that as Le's offenses occurred subsequent to *Apprendi,* he had notice that a major change in sentencing was likely to occur. The state appellate decision relied on *Mallette,* 2007 WL 530187, *7 to conclude that Le's due process rights were not violated. It analyzed the *ex post facto* issue by referring to the *Mallette* decision. That court clearly engaged in a federal constitutional analysis to conclude *Foster* did not violate the *Ex Post Facto* Clause. *See e.g. United States v. Barton,* 455 F.3d 649 (6th Cir.2006) (after analyzing *Apprendi, Blakely* and *Book-*

*er,* remedy announced in *Booker* was not unexpected as offense was committed after *Blakely.*) The state appellate court did not unreasonably apply United States Supreme Court precedent.

Le also argues that *Foster* runs afoul of *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), and its progeny. The *Booker* Court confronted the constitutionality of a federal sentencing statute that resembled Ohio's in that it required judicial findings of fact for upward departures from a base sentence. The *Booker* Court found that such mandatory factfinding violated the holding in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, and excised those portions of the statute requiring judicial factfinding before increasing a base sentence. The Court also allowed sentencing courts to engage in factfinding in determining sentences by using the previously-mandatory sentencing factors as mere guidelines that should be considered in sentencing. *Booker,* 543 U.S. at 249, 125 S.Ct. 738. The Court required federal courts to apply both parts of its holding—striking the mandatory findings on Sixth Amendment grounds and using the previously-mandated factors as guidelines—in future cases because applying both holdings in combination best approximated the will of Congress in enacting sentencing reform. *Id.* at 249, 125 S.Ct. 738. Finally, the *Booker* Court struck those sections of the statute requiring a relatively strict appellate review of departures from the previously mandatory sentencing guidelines and found that the resulting statute allowed for appellate review under a "reasonableness" standard." *Id.* at 259–60, 125 S.Ct. 738.

When the Ohio Supreme Court determined that Ohio's sentencing statutes violated *Blakely,* it explicitly turned to *Booker* when considering potential remedies. *Foster,* 109 Ohio St.3d at 26–27, 845 N.E.2d at 495–96. In the end, the Ohio Supreme Court excised those portions of the statute requiring judicial factfinding before making upward departures from a base sentence. *Id.,* 109 Ohio St.3d at 28–30, 845 N.E.2d at 497–98. It instructed Ohio courts when making sentencing determinations to use as guides O.R.C. §§ 2929.11 and 2929.12 setting out the overall purposes of sentencing and factors relating to the seriousness of the offense and the likelihood of recidivism. *State v. Mathis,* 109 Ohio St.3d 54, 62, 846 N.E.2d 1 (2006).[4] This result, according to the Ohio Supreme Court, best approximated the will of the legislature while doing away with the constitutionally defective provisions. *Id.*

■ Le next argues that the *Foster* remedy in state court, unlike the *Booker* remedy in federal court, effectively eliminates appellate review of whether a particular sentence is reasonable. He claims that it was unforeseeable and indefensible for the *Foster* court to replace a guided sentencing scheme with one allowing unfettered and unreviewable discretion. Le contends that *Booker* permitted appellate review on the grounds of reasonableness as the restructured statute required sentencing courts to state reasons for departing from the previously-mandatory guidelines. *Foster,* however, does not require any judicial explanation for a sentence within a permitted range. Thus, Le contends, *Foster* eliminated an appellate

---

**4.** The Ohio Supreme Court decided *Mathis* on February 27, 2006, the same day as *Foster.* The issue before the *Mathis* Court was whether the state court of appeals may order a limited remand for necessary statutory findings to be placed on the record, or whether it must vacate the sentence and remand for a *de novo* sentencing hearing. The Court applied *Foster* and remanded for resentencing. *Mathis* at 55, 846 N.E.2d 1.

court's ability to review a sentence effectively. Le argues that this retroactive abrogation of his appellate rights, distinguishes *Foster* from *Booker* and violates the *Ex Post Facto* Clause. He also argues that the severance in the sentencing scheme prevents the legislature from accomplishing its goal of establishing "uniformity and proportionality in Ohio's criminal sentencing scheme." (Doc. No. 8, p. 11.)

 There has never been a federal constitutional right to an appeal. *Abney v. United States,* 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977); *Martinez v. Court of Appeal,* 528 U.S. 152, 160, 120 S.Ct. 684, 145 L.Ed.2d 597 (2000); *accord Hollin v. Sowders,* 710 F.2d 264–267 (6th Cir.1983); *Horton v. Bomar,* 335 F.2d 583, 584 (6th Cir.1964). Even more to the point, a defendant does not have the right to appeal the length of his sentence. *See United States v. Nation,* 352 F.3d 1075, 1076–1077 (6th Cir.2003) ("[A Defendant] has no constitutional right to appeal his sentence."); *accord United States v. Burns,* 433 F.3d 442, 445 (5th Cir.2005) ("There is no constitutional right to appeal a criminal sentence.") (*citing Jones v. Barnes,* 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983)). However, "if a State has created appellate courts as 'an integral part of the . . . system for finally adjudicating the guilt or innocence of a defendant,' the procedures used in deciding appeals must comport with the demands of the Due Process and Equal Protection Clauses of the Constitution." *Evitts v. Lucey,* 469 U.S. 387, 393, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985) (*quoting Griffin v. Illinois,* 351 U.S. 12, 18, 76 S.Ct. 585, 100 L.Ed. 891 (1956)).

Ohio, by statute, confers defendants limited appellate rights with respect to their sentences. *See* O.R.C. § 2953.08. As explained in its opinion, the *Foster* Court excised certain statutory provisions that required impermissible judicial factfinding as follows:

The following sections, because they either create presumptive minimum or concurrent terms or require judicial fact-finding to overcome the presumption, have no meaning now that judicial findings are unconstitutional: R.C. 2929.14(B), 2929.19(B)(2), and 2929.41. These sections are severed and excised in their entirety, as is R.C. 2929.14(C), which requires judicial fact-finding for maximum prison terms, and 2929.14(E)(4), which requires judicial findings for consecutive terms. R.C. 2953.08(G), which refers to review of statutory findings for consecutive sentences in the appellate record, no longer applies. We also excise R.C. 2929.14(D)(2)(b) and (D)(3)(b), which require findings for repeat violent offenders and major drug offenders.

. . . Excising the unconstitutional provisions does not detract from the overriding objectives of the General Assembly, including the goals of protecting the public and punishing the offender. *See* R.C. 2929.11(A). The excised portions remove only the presumptive and judicial findings that relate to "upward departures," that is, the findings necessary to increase the potential prison penalty. We add no language, and the vast majority of S.B. 2, which is capable of being read and of standing alone, is left in place.

We therefore hold that R.C. 2929.14(B) and (C) and 2929.19(B)(2) are capable of being severed. After the severance, judicial fact-finding is not required before a prison term may be imposed within the basic ranges of R.C. 2929.14(A) based upon a jury verdict or admission of the defendant. We further hold that R.C. 2929.14(E)(4) and 2929.41(A) are capable of being severed. After the severance, judicial fact-finding is not re-

quired before imposition of consecutive prison terms. Finally, we hold that R.C. 2929.14(D)(2)(b) and (3)(b) are capable of being severed. After the severance, judicial fact-finding is not required before imposition of additional penalties for repeat-violent-offender and major-drug-offender specifications. The appellate statute R.C. 2953.08(G), insofar as it refers to the severed sections, no longer applies.

Accordingly, we have concluded that trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences.

*Id.* at 29–30, 845 N.E.2d 470.

■ *Foster* held O.R.C. § 2953.08, in so far as it refers to the other severed sections, no longer applies, however, it did not sever all appeal rights.[5] It also left intact the statutory provisions setting forth the purposes of sentencing and the provisions setting out seriousness and recidivism factors—O.R.C. § 2929.11 and 2929.12. The provisions are not dissimilar to those found in the federal sentencing guidelines. They guide judges in the "overriding purposes of felony sentencing, which are 'to protect the public from future crime by the offender and others and to punish the offender,'" and yet give trial courts discretion "to determine the most

effective way to comply with the purposes and principles of sentencing." *Id.* (*quoting Foster* at 12–13, 845 N.E.2d 470, O.R.C. §§ 2929.11(A), O.R.C. § 2929.12(A)); *see also State v. Kalish,* 120 Ohio St.3d 23, 26, 896 N.E.2d 124, 128–29 (2008). For example, trial courts generally discuss the seriousness of the offense and the likelihood of recidivism at the sentencing hearing. *See Almendarez–Torres v. United States,* 523 U.S. 224, 243, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998) ("recidivism . . . is a traditional, if not the most traditional, basis for a sentencing court's increasing an offender's sentence").[6]

■ Though Ohio courts never disputed criminal defendants had a right to appeal their sentence after *Foster,* it was unclear what standard of review should apply to such appeals. Prior to *Foster,* it was undisputed that an appellate court was to "review the records, including the findings underlying the sentence or modification" and had the power to "take any action . . . if it clearly and convincingly finds" either that the record fails to support the sentencing court's findings or the sentence is otherwise contrary to law. *Kalish,* 896 N.E.2d at 127 (*citing* O.R.C. § 2953.08(G)(2)). In fact, the former statute expressly stated that "[t]he appellate court's standard for review is not whether the sentencing court abused its discretion." O.R.C. § 2953.08(G)(2).

---

5. In *Mathis,* 109 Ohio St.3d at 59, 846 N.E.2d at 5, the Ohio Supreme Court stated:

Unaffected by *Foster* were the state's appeals as a matter of right for a sentence where no prison term was imposed despite the presumption favoring prison for certain offenses, or for judicial modification of a sentence for a first—or second-degree felony under R.C. 2929.20. [R.C. 2953.08(B)(1) and (3)]. Nor was the defendant's or the state's appeal as of right affected when the sentence "is contrary to law." [R.C. 2953.08(A)(4) and (B)(2)].

6. A judge can consider such factors as "whether the physical or mental injury was worsened 'because of the physical or mental condition or age of the victim;' whether the offense caused serious physical, psychological, or economic harm to the victim; whether the defendant held a public office or position of trust in the community, and the offense related to that office or position." *Foster,* 845 N.E.2d at 485.

■ After *Foster* excised the requirement for the sentencing court to make judicial factfindings, it was undecided if sentences were to continue to be reviewed under a clear and convincing standard or under the old abuse-of-discretion standard. In *Kalish,* the Ohio Supreme Court chose the latter standard and held that appellate courts must apply a two-step approach in reviewing felony sentences. "First, they must examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law. If this first prong is satisfied, the trial court's decision shall be reviewed under an abuse-of-discretion standard." 896 N.E.2d at 126. The *Kalish* Court explained that O.R.C. §§ 2929.11 and 2929.12 are not factfinding statutes, but instead set out guides for a trial court to use in fashioning an appropriate sentence. *Id.* at 128. Therefore, sentences, including those made consecutive, are subject to appellate review for abuse-of-discretion. *Id.*

While *Kalish* dictated the standard in Ohio courts for reviewing felony sentences, the Court's sole concern in the instant matter is whether this violates clearly established federal law as set out in United States Supreme Court precedent. Le argues that the severance remedy crafted in *Foster* is not analogous to the remedy crafted in *Booker.* The Court concedes that the remedies are not identical. The *Booker* Court left in place sentencing guidelines, but found that the application of the guidelines was not mandatory. *Foster,* on the other hand, eliminated findings previously applicable to consecutive and some greater than the minimum terms, while maintaining a relatively narrow range of sentences for the five levels or degrees of felonies. Le avers that *Booker* maintained a reasonableness standard of review concerning the appropriateness of a given sentence while *Foster* did not. Ohio, as stated above, currently allows review on an abuse-of-discretion standard. The *Booker* decision, however, did not set a threshold or minimum standard determinative of whether a state's appellate process comports with due process and equal protection. Le has not identified any clearly established federal law that renders abuse-of-discretion sentencing appeal procedures, such as those adopted in Ohio, unconstitutional.[7] As such, any differences between the two standards of appellate review are not of a constitutional magnitude.

■ Lastly, Le argues that the Ohio Supreme Court in *Foster* improperly severed a statutory presumption in favor of concurrent sentences, thereby disadvantaging him. He relies on *Oregon v. Ice,* —— U.S. ——, 129 S.Ct. 711, 172 L.Ed.2d 517 (2009), in which the United States Supreme Court upheld an Oregon sentencing statute allowing trial courts to engage in factfinding when imposing consecutive sentences. The *Ice* Court held that "consecutive sentencing decisions do not implicate the Sixth Amendment." *See also Newman v. Wilson,* 2009 WL 1212262, *11, fn. 6 (N.D. Ohio Apr. 30 2009) (Sixth Amendment does not preclude judicial factfinding as a basis for imposition of consecutive sentences). Therefore, when imposing a consecutive sentence, neither judicial factfinding nor the lack of such findings, violate clearly established federal law.

■ Hindsight may well suggest that the *Foster* Court needlessly severed

---

**7.** Though the *Kalish* decision was not rendered until after Schweitzer's final sentencing appeal, it is immaterial as Schweitzer has failed to identify any clearly established federal law that invalidates either of the appellate review approaches considered by Ohio courts.

O.R.C. § 2929.14(E)(4) requiring judicial findings before imposing consecutive sentences. In light of *Ice*, these types of provisions do not implicate the Sixth Amendment, contrary to the conclusion in *Foster*. Be this as it may, it is not a reason to grant Le's habeas petition. As to Le, this issue is nothing more than harmless error. *See Washington v. Recuenco*, 548 U.S. 212, 218, 126 S.Ct. 2546, 165 L.Ed.2d 466 (2006). It is well-established that a constitutional error does not automatically entitle a defendant to habeas relief, as such error may, in many cases, be harmless. *Id.* ("Only in rare cases has this Court held that an error is structural, and thus requires automatic reversal."); *Curtis v. Brunsman*, 2009 WL 1585527, 2009 U.S. Dist. LEXIS 47033 (S.D. Ohio June 4, 2009) (finding that a *Blakely* violation does not constitute structural error and is subject to harmless error review).

Here, Le was first sentenced according to the statutory scheme in place at the time of his offenses. The sentencing judge made factual findings in accordance with Ohio law and imposed consecutive sentences. Applying *Foster*, the Ohio Supreme Court reversed his sentence. Le was then resentenced according to the post-*Foster* standards and again received consecutive sentences. Since Le was sentenced twice to the same prison term, the first time enjoying the presumption he claims *Foster* later deprived him of, his sentence cannot be effectively challenged in this manner.

The new judicial interpretation of the law brought about by *Booker* and *Foster* affects Le's punishment, not whether his conduct was innocent. Aggravated robbery and felonious assault were not made a crime by *Foster*. Le also had fair warning that these crimes were punishable by a prison term of up to either eight or ten years, as spelled out in the Ohio Revised Code. He had sufficient warning of the possible consequences of his actions, and his sentence does not run afoul of the core concepts discussed in *Rogers*. The Court cannot find that the state court's decision concerning Le's resentencing was contrary to, or involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court. Le's sole ground for relief is without merit.

### V. Conclusion

For the foregoing reasons, the Court recommends that Le's Petition be denied.

Dated: September 9, 2009.